AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
## for the
### Central District of California

FILED
CLERK, U.S. DISTRICT COURT
Nov. 10, 2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___IM___ DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
11/10/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

| | |
|---|---|
| United States of America<br><br>v.<br><br>RICARDO OSUNA-ALARCON,<br><br>Defendant | Case No.  2:22-mj-04475-DUTY |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about October 19, 2022, in the county of Los Angeles in the Central District of California, the defendant violated:

*Code Section*
21 U.S.C. § 841(a)(1)

*Offense Description*
Possession with Intent to Distribute a Controlled Substance

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Michael Studley
*Complainant's signature*

Michael Studley, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: November 10, 2022

/s/ Patricia Donahue
*Judge's signature*

City and state:  Los Angeles, California

Hon. Patricia Donahue, U.S. Magistrate Judge
*Printed name and title*

AUSA: Amanda Elbogen (x5748)

## AFFIDAVIT

I, Michael W. Studley, being duly sworn, declare and state as follows:

### PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Ricardo **OSUNA-Alarcon** (**"OSUNA-Alarcon"**) for a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

### BACKGROUND OF AFFIANT

3. I have been a Special Agent of the Drug Enforcement Administration ("DEA") since October 2019, and am assigned to Los Angeles Field Division Group 1. I have completed a 16-week DEA training program in Quantico, Virginia. I have specialized training and experience in the investigation of major narcotics trafficking organizations involved in violent crimes, racketeering, conspiracy, and narcotics importation and distribution.

1

4. I have participated in the debriefing of defendants and informants who had personal knowledge regarding major narcotics trafficking organizations, including cartel groups in Mexico. I am familiar with narcotics traffickers' methods of operations, including the manufacture, storage, transportation, and distribution of narcotics, the collection of money that represents the proceeds of narcotics trafficking, and money laundering.

5. Prior to being employed by the DEA, I was employed by the United States Border Patrol in Arizona between September 2016 and October 2019. In that capacity, I completed an 18-week training program in Artesia, New Mexico. During my tenure with the Border Patrol, I participated in drug and human trafficking investigations.

6. Through my training, experience, and discussions with investigators experience in the operations of large-scale drug trafficking organization, I have become familiar with the methods drug trafficking organization use to transport and distribute drugs and drug proceeds. I am also familiar with the sophisticated methods that drug organizations use to avoid law-enforcement detection, such as using multiple and prepaid cell phones, countersurveillance measures, vehicles with concealed compartments, false or fictitious identities, and coded or vague communications over conversations over cell phones, including text messages. I am aware that drug traffickers drop or switch cell phones and cell phone numbers frequently to thwart law enforcement investigations into their criminal activities.

## SUMMARY OF PROBABLE CAUSE

7. In February 2022, a drug broker in North Carolina, Osiel BUENO, coordinated a drug deal with an individual he believed was a customer, but who was in fact a Confidential Source working for the DEA ("CS-1").[1] BUENO agreed to arrange the delivery of drugs to the CS-1 in the Los Angeles, California area using the cartel's drug couriers. BUENO introduced CS-1 to A.H.G. and **OSUNA-Alarcon** as couriers working for BUENO in the Los Angeles, California area.

8. Later in February 2022, **OSUNA-Alarcon** and A.H.G. met with CS-1 to discuss the drug deal. An Undercover DEA Agent was also present at that meeting. Law enforcement followed **OSUNA-Alarcon** and A.H.G.'s car as they left the meeting, and conducted a traffic stop, during which **OSUNA-Alarcon** presented his identification to the officers.

9. On November 9, 2022, a Sen Bernardino Sheriff's Deputy saw **OSUNA-Alarcon** commit multiple traffic violations and pulled him over to conduct a traffic stop. During that stop, **OSUNA-Alarcon** was unable to provide a driver's license or state where he was going, and he appeared increasingly nervous. The officer asked **OSUNA-Alarcon** for consent to search the car, which **OSUNA-**

---

[1] CS-1 has no criminal convictions, but has been arrested twice for drug trafficking offenses. After his/her 2011 arrest for trafficking marijuana, CS-1 cooperated with law enforcement and was not prosecuted. In 2019, s/he was arrested with kilograms of cocaine and fentanyl pills, and is currently cooperating in exchange for consideration during sentencing. The information provided by CS-1 has been independently corroborated and confirmed to be true.

**Alarcon** gave.  Inside his car, the deputy found approximately 25 pounds of suspected methamphetamine.

STATEMENT OF PROBABLE CAUSE

10.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

    **A.**    **OSUNA-Alarcon is Present At An Attempted DEA Buy of 50,000 Fentanyl Pills**

11.  According to CS-1, on or about February 22, 2022, CS-1 was in contact with BUENO, who was a drug broker residing in North Carolina, whom CS-1 had previously met in person.  BUENO introduced CS-1 to A.H.G. and **OSUNA-Alarcon** as couriers working for BUENO in the Los Angeles, California area.

12.  Later on February 22, 2022, CS-1 received a call on a recorded line from an unknown courier (later identified as A.H.G.).  A.H.G. said, "I'm calling on behalf of El Primo," that he was in Paramount, CA, and asked where he could meet CS-1.  Moments later, CS-1 texted the location where the meeting could take place.  At approximately 3:30 p.m., SA Angelica Childs observed a gray Toyota Camry arrive and park near the Garden Center at the Lowes home improvement store located at 22255 S Western Avenue, Torrance, California 90501.  At approximately 3:53 p.m., CS-1 and SA Jesus Gamez, who at the time was acting in an undercover capacity, placed a call to A.H.G.  In the call, A.H.G. stated they had left the parking lot but would come over.  Moments later, A.H.G. and another individual (later identified as **OSUNA-Alarcon**) arrived in the gray Camry.  During the ensuing

4

meeting, which was recorded and observed by an Undercover agent, A.H.G. said he was only there to pick up money and did not have any drugs. At that time, **OSUNA-Alarcon** repeated, "Flee, flee, flee," and both appeared nervous, according to CS-1. After a few minutes, A.H.G. and **OSUNA-Alarcon** departed. A Torrance Police Department officer stopped and searched their car. Both A.H.G. and **OSUNA-Alarcon** provided identification during this traffic stop (**OSUNA-Alarcon** provided a Mexican identification card). No drugs were found in the vehicle, and both individuals were released.

      B.    **San Bernardino Sheriff's Office Arrest OSUNA-Alarcon**

      13. On November 9, 2022, at approximately, 9:39 a.m., I was contacted by Corporal Mike Chavez from San Bernardino's Sheriff's Office Highway Interdiction team. At that time, Cpl. Chavez advised me that they had conducted a traffic stop of a vehicle containing approximately 25 pounds of suspected methamphetamine. Cpl. Chavez further stated that the driver and sole occupant of the vehicle was **OSUNA-Alarcon**. I requested that Cpl. Chavez send me a photo of **OSUNA-Alarcon** to see if it matches the same Mexican identification card that was documented during the Torrance Police Department traffic stop on February 22, 2022. Cpl. Chavez sent me a photograph of the identification card **OSUNA-Alarcon** provided. I reviewed it and confirmed that both Mexican identification cards documented were the same card.

      14. Additionally, Cpl. Chavez told me the following: At approximately, 8:51 a.m., **OSUNA-Alarcon** was the driver of a
5

silver Nissan Sentra bearing California license plate 9BKF621[2], which he had stopped on California interstate 15/Barstow. Cpl. Chavez stated that **OSUNA-Alarcon** was stopped for violations of California Vehicle Code Sections 22356(b): Speeding Over 70MPH and 26708(a)(2): Window tinting. After pulling the car over, Cpl. Chavez stated that **OSUNA-Alarcon** admitted to traveling over 75 mph.

15. After being asked for identification and registration information, **OSUNA-Alarcon** only provided a Mexican identification card. **OSUNA-Alarcon** provided a registration and insurance card from the glove box of the car, and the name on the card was Jose Pardo. Cpl. Chavez asked **OSUNA-Alarcon** for the name of the owner of the vehicle, and **OSUNA-Alarcon** did not know the name of the owner. **OSUNA-Alarcon** stated someone had loaned him the vehicle, but could not provide a name of who loaned it to him. Later, **OSUNA-Alarcon** stated he had actually bought the vehicle but did not register the vehicle in his name.

16. Per Cpl. Chavez, **OSUNA-Alarcon** appeared to become more nervous as the traffic stop continued. Cpl. Chavez asked **OSUNA-Alarcon** where he was traveling to. **OSUNA-Alarcon** stated that he was driving to Barstow to visit a relative, but was unable to provide an address or street name of where he was going. **OSUNA-Alarcon** said he was unfamiliar with the area and would call his relative when he arrived. Cpl. Chavez then asked **OSUNA-Alarcon**

---

[2] I conducted a law enforcement license plate database check which indicated that CA license plate 9BKF621 is registered to Jose PARDO at 15922 Drizaba Avenue, Paramount, California 90723.

if there were any drugs or illegal items in the car. **OSUNA-Alarcon** stated there were not.

17. Due to Cpl. Chavez's observations of the totality of the circumstances, including **OSUNA-Alarcon**'s inability to provide a driver's license, the lack of registration in his own name, his inability to answer basic questions about where he was traveling, and his increasingly nervous demeanor, Cpl. Chavez asked **OSUNA-Alarcon** for consent to search his vehicle, and **OSCUNA-Alarcon** consented.

18. Moments later, Cpl. Chavez deployed his narcotic detection police K9 Eros,[3] to conduct a free-air sniff of the vehicle. At that time, K9 Eros alerted to the odor of narcotics coming from the trunk of the vehicle. Cpl. Chavez conducted a search of the vehicle and found (with the help of a K-9 who alerted Cpl. Chavez to the rear of the vehicle) approximately 25 pounds of suspected methamphetamine inside a cardboard box in the trunk of the vehicle. Cpl. Chavez stated that the bags contained a white crystal-like substance that appeared, based on his training and experience, to be methamphetamine.

19. Cpl. Chavez then stated to me that the cardboard box containing the suspected methamphetamine was removed from the vehicle and placed away from the area. K9 Eros then conducted a secondary free-air sniff around the box, which K9 Eros alerted to again for the presence of narcotics.

---

[3] San Bernardino Sheriff's Office – K9 Eros has been a sworn police K9 since May 2017 and has been certified annually since that time.

## CONCLUSION

20. For all of the reasons described above, there is probable cause to believe that **OSUNA-Alarcon** has committed a violation of 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute a Controlled Substance.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this __10th__ day of
__November__, 2022.

_Patricia Donohue_
UNITED STATES MAGISTRATE JUDGE

8